Good morning, Your Honors. I'm attorney Nora Milner, and I do apologize. I was in courtroom one for Oral's as well, and just a tad late. Your Honors, I'd like to address three issues that I believe are extremely important and hopefully time will permit us to review them all. However, in reviewing these two, these three issues, I believe it's more, it will facilitate the Court's review to put them in the context of two specific actions. First, my client, Mr. Flores-Macedo's application for residency pursuant to IRCA Section 210. Immigration and Nationality Act 246 specifically provides that rescission has to take place within five years of adjustment of status. Mr. Flores-Macedo received his permanent residency on December 1st of 1990 pursuant to Section 210, which was the agricultural provision of the Immigration Reform and Control Act of 1986. Rather than proceed to rescission, however, the government instituted removal proceedings eight years later without any showing at all that Mr. Macedo had ever committed a separate offense such as fraud that would establish the basis for any removal. Essentially, the government is attempting to bootstrap the provisions of rescission, knowing that rescission is barred by five-year statute of limitations. They're attempting to institute removal proceedings for an offense which preceded the issuance of permanent residency. But our cases suggest that he was subject to removal, not rescission proceedings. And our cases in Oleto and Choey have dealt with this and saying that this five-year limit on rescission doesn't relate to removal. Is there something that we're missing in applying those cases to your circumstance? Yes, Your Honor. In fact, rescission and removal are really two separate creatures, and occasionally, of course, they will overlap. But the provisions that Congress created for rescission were very specific and inherently create an opportunity for appropriate due process. Was your client subject to removal or rescission? Let's kind of start with that as a baseline. Okay, Your Honor, he was really only subject to rescission because he did not commit a separate offense which rendered him removable. And the provisions of removal require that there be, for example, a showing of fraud that Mr. Flores Macedo committed in the obtaining of the permanent residency application. How do you distinguish the cases that Judge McEwen has cited which seem to say after the five years it's only removal? Your Honor, the cases regarding rescission specifically that the government has cited to the court involve really two issues. Number one, the commission of fraud or some specific act on the part of the alien obtaining that residency. And secondly, that there was a separate committable, separate offense which was committed. For example, after the residency was granted, the individual committed, you know, a robbery or some other form of removable offense. The problem in this case is that the government was aware that rescission was no longer available. It was barred by the five-year statute. Therefore, it proceeded to removal eight years later, knowing full well that rescission is not going to work. The question, however, is absent a showing that the petitioner has committed fraud in the obtaining, and there has been no showing of that at all. It seems that the government should not be permitted to use removal proceedings as an alternate when, in fact, rescission would be appropriate. And then, of course, they're barred by the statute of limitations on that matter. The other issue, Your Honor, which has, I believe, interestingly been addressed to you just within the last few minutes, is the rulemaking authority of the attorney general in this case. And it has become problematic, and I believe clearly the court has seen that. The creation of new hardship standards in the 212H has created, has caused an immense amount of confusion in the field of the practice of immigration law, which is inherently complicated anyway. Kagan. Right. We agree with that. And then we have the attorney general creating a rule which states that although the 212H requires extreme hardship, in his discretion, he will raise the standard, he will raise the bar to exceptional and extremely unusual. That rulemaking promulgation, in fact, is an ultra-virus act, and it has not assisted the community and, in fact, has caused applicants and petitioners to come before the service and even the immigration courts with a standard that is difficult to ascertain at any time. And clearly the immigration judges have enough on their plates. Counsel, I'd like you to address if, in fact, the conviction for aiding a relative to go through the checkpoint is not smuggling, not covered under the statute, what effect, if we were to hold that, what effect would that have on this case? Your Honor, there have been several recent developments, certainly even since this case was briefed to the court, regarding the issue of alien smuggling. This Court has held that there is a waiver available. The concern that we have regarding this particular issue that Your Honor raises is that eluding is not necessarily the same as alien smuggling. If, indeed, they were, they would be combined. There is a very specific regulation, a very specific code for eluding. And the elements of proof for that are not necessarily the same as alien smuggling. One, for example, could elude by perhaps omission, could be driving and miss the border. If we agreed with you that this 60-mile from the checkpoint activity didn't fall in that statute, so that would take out that ground presumably for relief, then the question is the 212H waiver and there's an assault with a deadly weapon charge. What, are we able to tell from the BIA as to what ground it adopted, or would we need to remand this if you are correct, let's just say we agree with you on the eluding aspect. Where does that leave us? Well, Your Honor, the point is, in fact, again, very well taken. The government goes pretty much back and forth as to whether Mr. Flores Macedo is or is not a resident. If he, in fact, adjusted to residency, assuming that the assault with a deadly weapon is an aggravated felony, then he is not eligible for a 212H waiver. However, if he never adjusted to residency, then as a non-permanent resident, he is eligible. So the board did not really create a standard, and in fact, the board created, in violation of the San Pedro case, which this Court has decided, an alternate holding, which makes it very difficult for this Court to determine even its own jurisdiction. Was it discretionary or not? Just to clarify that to make sure I understand, what do you characterize as the alternate holding of the board? It has to do, Your Honor, with the question of, is the individual statutorily eligible, or is the decision based on mere discretion? Clearly, if the individual is statutorily ineligible, that becomes a matter that is within the jurisdiction of this Court to review. However, if it was based strictly on discretion, then, of course, 242 would prohibit the jurisdiction of this Court. And alternate. I did, Your Honor. I was going to say I have one minute left. With your permission, I will reserve. All right. Good morning. Good morning. May it please the Court. My name is Melanie Schender, Assistant United States Attorney, and I represent the Attorney General in this matter. Ms. Schender, if you wouldn't mind picking up where we left off with Flores-Macedo's counsel, and that is, just hypothetically, if we were to agree with her that this eluding wasn't a legitimate grounds because of the application of the statute, where would that leave us then on appeal with respect to the assault with a deadly weapon? Would we need to have that remanded to the BIA so it could adopt or not adopt that ground? No, Your Honor. You would not need to remand it on that ground because the immigration judge made a discretionary determination that is unreviewable by this Court, that Flores was not deserving of a favorable exercise of discretion to receive the waiver. But we've had these cases where, when we have two grounds, that would be normally nonreviewable, and I agree with you, and then we would have this other ground having to do with the eluding, which would be a legal issue that would be reviewable. If we can't tell from the BIA, since it only adopted the results, not any particular aspect of it, how do we know which of these is the BIA's decision? Well, Your Honor, in this case, unlike the cases of Lonta and San Pedro and the other opinion, said that it agreed with the results reached by the immigration judge. By that statement, you can infer that the Board of Immigration Appeals adopted every result reached by the immigration judge. This was not a split decision. The BIA said that there were a lot of equities in this case in favor of the Petitioner, and I'm concerned that even for the I.J., if the I.J. had known that he was wrong on the smuggling aspect of the case, then he would know that the other ground, the other conviction, was a waivable one. But here he was saying, well, the smuggling is not a waivable one, so I just, you know, I'm going to exercise my determination that this person isn't eligible for any kind of relief. Now, if we take away the erroneous determination about smuggling, and everybody talks about equities, can we be sure that either the I.J. or the BIA would not possibly reach a different determination? Your Honor, from the text of the immigration judge's decision, we can see that he based that decision to not grant the waiver on the appellant's violent act of pulling a knife on an individual who was subsequently murdered by the alien's cousin. He did not factor the smuggling issue back into that decision. In looking at the discretionary issue, he looked at the murder conviction, at Mr. Flores' DUI convictions, at his other activity that showed that he was a person with a lot of problems. This was not his only assault arrest. He had previously been arrested for assault with a deadly weapon. So I think we can see that the smuggling issue was separated from the issue of discretion. Then turning to the wording in the BIA decision, can we be clear on the basis for which it supported the I.J.? The Board of Immigration Appeals stated that it agreed with the results of the immigration judge. So it's not they did not go through each result separately. However, it didn't separate them out in any way. So I think from that it's possible to find that the Board of Immigration Appeals affirmed the I.J. on each and every result. What was the last sentence in the BIA's opinion? Do you remember that? I don't recall it. I have it right there at the table if you'd like me to have it. It says, we agree with the results reached by the immigration judge. That's not the last sentence. The actual last sentence is, accordingly, the appeal is dismissed. But the next last sentence reads, the respondent made several other arguments on appeal. While we acknowledge the presence of positive equities in this case, none of these arguments persuade us that the appeal should be sustained. I guess one question I have is, I went back to Lanza, and it says there, if it's unclear whether the BIA affirmed on a reviewable ground or an unreviewable ground, then due process requires us to assume that the BIA relied on the reviewable ground or demand the case for clarification. Now I recognize, and you've pointed out, that's a summary. Affirmance. But in some ways, this mirrors the language of the summary affirmance statute, where it says that what the BIA is doing on a summary affirmance is affirming the result of the IJ. So I'm wondering whether, in this case, just because it's exactly the same posture and the language is so close, why, you know, if we were to disagree with you on the border checkpoint issue, why we wouldn't simply remand for the BIA to clarify? And then if it, of course, says we affirm on the waiver issue, as I understand that that then would be unreviewable, is that correct? Yes, Your Honor, and I would agree with that point. I would like to turn to something opposing counsel mentioned at the beginning of her argument. She argues that Flores adjusted under the SAW provisions, the Special Agriculture Worker provisions. In fact, the record is somewhat unclear because there was a lot of discussion going back and forth under what provision Mr. Flores adjusted under. However, in the immigration judge's decision, the first immigration judge decision in which the issue of removability was decided, the immigration judge analyzed the removability ground under the amnesty provisions. So this case is one in which Mr. Flores actually had to make an affirmative application to receive his green card, to receive permanent resident status, and there was, in fact, an allegation of fraud brought up in the record and alleged at the beginning of the case. The government was forced to withdraw that allegation of fraud because the same provisions, amnesty and the SAW provisions, require that any information submitted as part of those applications be kept confidential and not be used in any way against the aliens. There was no way to support the allegation of fraud. However, it was known to the government that Mr. Flores did not disclose his assault with a deadly weapon conviction when he applied for his green card. And that was an affirmative application. To receive that, he had to establish that he was admissible and that he had not been convicted of a felony. And here he had been convicted of a felony. I think counsel had made some point that it's unclear whether he would then be analyzed waiver purpose-wise as admitted or not admitted. In your view, is that still up in the air if it were to go back? I'm not sure that it would be. I'm not really clear that there's any provision barring a lawful permanent resident from receiving a 212H waiver because it's a common occurrence in immigration courts for individuals who already are permanent residents to make this sort of reapplication on the basis of their spouse's status for adjustment of status. It's a way to find relief from removal. And here the immigration judge clearly decided that he was not worthy of that relief because of his criminal record. Counsel, do you agree that the smuggling statute is not applicable to what he did? Your Honor, that appears to be a case of first impression in this Court. I was unable to find any cases that stated that 1325A was definitively a falls under this alien smuggling statute. However, in the United States v. Angwin, this Court found that evidence that a transporter met aliens at a prearranged location north of the border and then immediately helped transport them further north into the country could be evidence that the aliens were smuggled. But we don't know the facts here, I guess. We know that he met this woman who was not a relative. I would like to make that clear as well. That was brought up. She was not a relative. He provided her with his wife's documents and told her to learn what was in those documents so that should they be stopped at San Clemente, she could pass as his wife. And that certainly does support the allegation that he was helping her elude inspection. I see that my time has expired. If you have any further questions? It appears not. Thank you. Thank you. Your Honors, I'd like to address just two final points of clarification regarding, first of all, the provisions of IRCA 86 separated those who adjusted through what we call the normal amnesty program and those who separated through the SAW provisions. SAW provisions provided an automatic conversion to permanent residency. They did not require anything more than a simple one-page form called a 990, upon which there appeared absolutely no questions regarding the issue of criminal convictions. Second, counsel for the government, as did the Immigration Court in this matter, continues to cast assault with a deadly weapon as a murder. In fact, the Criminal Court was in the, is and always have been in the best position to determine what is a criminal matter before it. And the Immigration Judge exceeded his authority by re-adjudicating and continually casting the assault with a deadly weapon as a murder. And in fact, there never was. He didn't say it was a murder. Your Honor? Sorry? He didn't say it was a murder, did he? Your Honor, he did. He said that Mr. Maceda's, Flores Maceda, was pivotal in the murder of another individual and continued to use the word murder. And in fact — That's different than saying he was guilty of murder. In fact, Your Honor, it did affect the decision of the Immigration Judge in this matter. And I believe that the, certainly the Immigration Court is, has no jurisdiction to collaterally attack a decision of the Criminal Court in this case. And therefore, by the Immigration Judge continuing to cast this as a murder conviction was prejudicial to Mr. Maceda. Thank you. Thank you, Your Honor. I thank both counsel for your helpful arguments this morning. The case of Flores Maceda v. Gonzales is submitted.
judges: B. Fletcher, McKeown, Whyte